USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/6/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
CHARLES SEIFE,                                             :
                                                           :
                                  Plaintiff,               :           1:16-cv-7140-GHW
                                                           :
                 -against-                                 :
                                                           :           MEMORANDUM OPINION
UNITED STATES DEPARTMENT OF                                :           AND ORDER
STATE,                                                     :
                                                           :
                                  Defendant.               :
                                                           :
-----------------------------------------------------------X
GREGORY H. WOODS, United States District Judge:

## I.      INTRODUCTION

        Before the Court is the second wave of cross-motions for summary judgment in this

Freedom of Information Act ("FOIA") dispute between journalist and professor of journalism

Charles Seife, appearing *pro se*, and the United States Department of State (the "State Department").

The dispute began with two July 22, 2014 requests for various records related to press briefings

given "on background" by anonymous senior agency officials.  The Court assumes the parties'

familiarity with the facts, legal principles, and conclusions of law set forth in the Court's prior

opinion, *Seife v. United States Dep't of State*, 298 F. Supp. 3d 592, 630 (S.D.N.Y. 2018) (the "Prior

Opinion") (ECF No. 40).  To the extent that any particular fact or legal principle articulated in the

Prior Opinion bears upon the analysis here, it is embedded in this opinion, below.[1]

        For the reasons that follow, Plaintiff's cross-motion for summary judgment is DENIED,

and the State Department's cross-motion for summary judgment is GRANTED IN PART and

---

[1] The Court incorporates the articulation of the applicable standards governing motions for summary judgment, FOIA requests, *pro se* litigants, and *Vaughn* indices, in its Prior Opinion.  *See* Prior Opinion, 298 F. Supp. 3d 604-08.

DENIED IN PART.

## II.    RECENT DEVELOPMENTS

In the wake of the Prior Opinion, the State Department released additional information to Plaintiff, and the parties engaged in very limited conferral regarding the outstanding issues.  Unable to reach an accord, the parties filed a second wave of cross-motions for summary judgment, which are now ripe for adjudication.

Before the Court are three discrete issues:  1) whether the State Department's search for responsive transcripts was adequate; 2) whether the State Department properly withheld information pursuant to 5 U.S.C. § 552(B)(5) ("Exemption 5"); and 3) whether the State Department properly withheld, pursuant to 5 U.S.C. § 552(b)(6) ("Exemption 6"), the identities of the "on background" briefers who are still employed by the federal government.  The Court addresses each of those questions in turn, below. [2]

During the course of briefing, the State Department submitted a revised *Vaughn* index, to which the Court refers *passim* (the "Revised *Vaughn* Index").  (ECF No. 58-1).  Additionally, the State Department voluntarily released additional information which has limited the scope of the dispute before the Court.  The voluntarily released information included the identities of the "on background" briefers previously withheld under Exemption 6, save for those briefers who are still currently employed by the federal government.  To facilitate the Court's *in camera* review of the privacy issues related to the disclosure of the remaining briefers, the State Department also submitted the June 6, 2018 *ex parte* declaration of Eric F. Stein (the "*ex parte* Declaration") which identifies the "on background" briefers at issue.

---

[2] In the Prior Opinion, the Court discussed whether certain materials could be properly withheld pursuant to the Presidential communications privilege.  Prior Opinion, 298 F. Supp. 3d at 621.  Subsequently, all such material has been produced.  Therefore, the Court need not consider that issue in this opinion.

### III.      REQUEST F-2014-12997

For the reasons articulated below, the Court holds that the State Department's search conducted in response to the remaining aspects of Plaintiff's FOIA request numbered F-2014-12997 ("Request 12997") was adequate in part, and inadequate in part.  Accordingly, summary judgment is granted to the State Department in part, and the parties are directed to confer regarding a solution to the narrow remaining areas of dispute.

#### A.  Standard

"[T]o establish the adequacy of a search, agency affidavits must be relatively detailed and nonconclusory, and submitted in good faith."  *Grand Central P'ship v. Cuomo*, 166 F.3d 473, 488-89 (2d Cir. 1999) (citation and internal quotation marks omitted).  "[A]n agency's search need not be perfect, but rather need only be reasonable."  *Id.* at 489.  "[A]gency affidavits must show that the agency made a good faith effort to search for the requested documents, using methods 'reasonably calculated' to produce documents responsive to the FOIA request."  *Garcia v. U.S. Dep't of Justice, Office of Info. and Privacy*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see Grand Cent. P'ship*, 166 F.3d at 489.  Affidavits and declarations submitted by an agency are "accorded a presumption of good faith."  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

#### B.  Recent Developments as to Request 12997

In the Prior Opinion, the Court held that "the State Department should have interpreted the 12997 request as one for unredacted transcripts of each 'on background' conference, briefing, and call that took place between January 20, 2009 and July 21, 2014, regardless of whether the transcript identified by name the government official providing the briefing."  Prior Opinion, 298 F. Supp. 3d at 609.  Subsequently, "the State Department conducted a search for any transcripts created by the

State Department—both for transcripts for 'on background' briefings and for internal-use transcripts of Government officials' engagements with select groups of reporters in which they spoke for 'attribution to a government official, not for individual attribution'—and produced 452 such transcripts to Plaintiff as a result of this search." Def.'s Reply (ECF No. 57) at 2 (citing Third Decl. of Eric F. Stein (ECF No. 50) ("3d Stein Decl.") ¶¶ 5-6, 10-11). Those 452 transcripts are the fruit of the State Department's search of "the shared drive where the stenographers who prepared the transcripts stored their files." Def.'s Br. (ECF No. 49) at 6. "[A]pproximately 50 [of those] transcripts . . . are not currently on the Department's website." Fourth Decl. of Eric F. Stein (ECF No. 58) ("4th Stein Decl.") ¶ 10. While the State Department was not obligated to produce transcripts which were publicly available, all 452 transcripts were produced. *See* Prior Opinion, 298 F. Supp. 3d at 610 (citing *Triestman v. U.S. Dep't of Justice, Drug Enforcement Admin.*, 878 F.Supp. 667, 671 (S.D.N.Y. 1995). There is no dispute that the search of the stenographers' shared drive was adequate to produce responsive transcripts produced by the State Department. *See* Pl.'s Br. (ECF No. 54) at 23-26.

Rather, the current dispute is as to the adequacy of the State Department's search of its employees' email accounts for material responsive to Request 12977. The genesis of the dispute is in the State Department's concern that Request 12997, as drafted, encompasses all transcripts, regardless of whether they were prepared by the State Department or not. Unlike the stenographers' shared drive, which has a high likelihood of containing all relevant transcripts prepared by the State Department, there is no centralized repository for non-State-Department-produced transcripts in the possession, custody or control of the State Department. Nor is there a centralized method by which transcripts prepared by other departments or agencies are disseminated throughout the State Department. 3d Stein Decl. ¶ 8. Instead, State Department employees acquire such transcripts

through individual subscriptions to mailing lists, and otherwise on an *ad hoc* basis.  *Id.*  Therefore,

locating all transcripts responsive to Request 12997 in the possession, custody or control of the State

Department that were not prepared by the State Department, would require individual review of

each of the State Department's 20,000 plus employees' data.  *Id.*  Uncontroversially, the State

Department considers conducting such a search to be unduly burdensome.

On this point, Plaintiff agrees.  Third Decl. of Charles Seife (ECF No. 53) ("3d Seife Decl.")

¶ 77.  ("I obviously wouldn't want State to search every employees' account, so I would be happy to

work with [Defendant] to limit the scope in that regard.").  However, the State Department's

proposed solution was to limit the scope of Request 12997 to State-Department-produced

transcripts—which in practice would limit the search to only the search of the stenographer's shared

drive described above.  *Id.* ¶ 81.  Plaintiff rejected that proposed limitation of Request 12997, citing

his concern that that limiting the searches to transcripts prepared by the State Department would

exclude transcripts of joint conferences prepared by another agency—for example "a joint

State/DoD briefing whose transcript was compiled by DoD and transmitted to State" would be

excluded by the State Department's proposed solution.  *Id.*  ¶ 82.

Despite Plaintiff's willingness to confer with the State Department as to document

custodians and search terms, the State Department instead unilaterally implemented the following

protocol.  *Id.* ¶ 86-87.  First, it adopted Plaintiff's suggestion that employees of the State

Department's Bureau of Public Affairs Office of Press Relations ("PA/PRS") were the most likely

to have responsive documents.  3d Stein Decl. ¶ 13.  Second, the State Department identified which

of its current employees were employed by PA/PRS from January 20, 2009 to July 21, 2014 (the

"12997 period").  *Id.*  The Deputy Director of PA/PRS has been employed at PA/PRS since

November 6, 2011.  Accordingly, she searched her email account using the search term "background

briefing"—limited to the date range of November 6, 2011 to July 21, 2014. *Id.* ¶ 13. She only searched the "White House" folder of her email account, "because she only subscribes to White House and DoD releases and only saves transmission from the White House." *Id.* That search led to the production of two transcripts which were not available on the White House's archive website. *Id.*

The third step in the State Department's search was to locate current PA/PRS employees who were employed by PA/PRS during the portion of the 12997 period not covered by the Deputy Director's search—January 20, 2009 to November 5, 2011. *Id.* ¶¶ 13-14. A search of their email, using unspecified terms and limitations, did not produce any additional transcripts. *Id.* ¶ 14.

Plaintiff objects to the email search procedure described above. He has also "made it clear [that] he would accept a search spanning no more than handful of employees" and "apologizes for bringing this matter before the Court, as it is something that should have been properly resolved through dialogue."[3] Pl.'s Br. at 25-26.

## C. Discussion

The State Department's search protocol was adequate as to the search for State Department produced transcripts, but inadequate as to the search for non-State Department produced transcripts. It is uncontested that the search of the stenographers' shared drive was reasonably calculated to produce responsive transcripts. *See* Pl.'s Br. at 23-26. The Court agrees and holds that the State Department's search and production of State-Department created transcripts was adequate. However, for the reasons that follow, the State Department's search of its employee's email accounts for transcripts created by other governmental departments or agencies was inadequate.

The State Department's email-search protocol was primarily limited, without sufficient

---

[3] The Court agrees with Plaintiff that this issue should be easily resolved through conferral.

justification, to the contents of the Deputy Director's email account.  As Mr. Stein's declaration

makes clear, the Deputy Director "only subscribes to White House and DoD releases and only saves

transmissions from the White House." 3d Stein Decl. at ¶ 13.  The State Department has further

indicated that not all employees subscribe to the same mailing lists, and some State-Department

employees may receive transcripts on an *ad hoc* basis.  Def.'s Br. at 7 (citing 3d Stein Decl. ¶ 8).

Accordingly, there is no reason to presume that the Deputy Director's email account was even

indicative, let alone panoptic, of the other PA/PSR employees' accounts—nor has any evidence

been presented suggesting that to be the case.

Nonetheless, the State Department limited the date range of their searches of the accounts

of the other current PA/PSR employees to the portion of the 12997 period not covered by the

search of the Deputy Director's account.  As a result, if there was any responsive material within

those two employees' accounts which was within the date range of the Deputy Director's term of

employment, it was not produced.  Nor is there any basis for the Court to find that any such

discovery would have been duplicative, given the State Department's admission that each employee

could have received responsive documents via their idiosyncratic decisions to subscribe to various

mailing lists, or otherwise on an ad hoc basis.[4]  Def.'s Br. at 7 (citing 3d Stein Decl. ¶ 8).

Accordingly, on its face, the search of PA/PSR employee accounts, while evidencing a reasoned

approach, was not "reasonably calculated produce documents responsive" to Request 12977—and is

therefore inadequate.  *Garcia*, 181 F. Supp. 2d at 366 (S.D.N.Y. 2002) (quoting *Weisberg*, 745 F.2d at

1485).

In his third declaration, Plaintiff articulates his current position regarding "the rough

parameters of a search that Plaintiff would consider adequate."  3d Seife Decl. ¶ 87.  The Court

---

[4] The Court notes that restricting the possible custodians to current PA/PRS employees employed during the 12977 period might also be considered unduly restrictive, but takes no position on that issue at this time.

7

takes no position as to Plaintiff's proposal, but expects that it may serve as a starting point for conferral between the parties.  A "reasonably calculated" search might, for example, include a search of all the current PA/PSR employees who were employed during the 12977 period.

For all the reasons articulated above, the Court grants Defendant's motion for summary judgment as it relates to the search for State-Department produced transcripts, and denies both motions for summary judgment as to the search for non-State-Department-produced transcripts. To the limited extent that disputes as to Request 12977 persist, the Court expects the parties will be able to resolve any such disputes through prompt conferral.

## IV.    APPICABILITY OF EXEMPTION 5

For the reasons which follow, as pertains to Exemption 5, the Court denies Plaintiff's motion for summary judgment and grants in part and denies in part the State Department's motion for summary judgment.

### A.  Standard

Exemption 5 encompasses the deliberative process privilege, a privilege that protects records that are: "(1) *predecisional*, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) *deliberative*, i.e., actually related to the process by which policies are formulated." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Grand Cent. P'Ship*, 166 F.3d at 482) (emphasis added).  "The deliberative process privilege is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials.  It is based on 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'"  *La Raza*, 411 F.3d at 356 (2d Cir. 2005) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001).*  This privilege protects "recommendations, draft documents,

8

proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," as well as "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Grand Cent. P'Ship*, 166 F.3d at 482 (citation omitted).[5]

A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Grand Cent. P'Ship*, 166 F.3d at 482; *accord Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002); *Hopkins v. U.S. Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). In assessing whether a document is predecisional, courts have considered whether the government can: "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." *Nat'l Congress for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (quotations and citation omitted). However, those three factors are best considered sufficient, rather than necessary, for the Government to justify its invocation of the deliberative process privilege, as the "existence of the privilege [does not] turn[] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." *NLRB v. Sears*, 421 U.S. 132, 151 n.18 (1975); *see Dipace v. Goord,* 218 F.R.D. 399, 405 (S.D.N.Y. 2003) ("the fact that the government does not point to a specific decision made by the [agency] in reliance on the [allegedly privileged document] does not alter the fact that the [document] was prepared to assist [agency] decision making on a specific issue.") (quoting *Tigue,*

---

[5] In its Prior Opinion, the Court determined that "the State Department here may withhold documents that reflect agency deliberations regarding the manner in which its policies are explained to the public." Prior Opinion, 298 F. Supp. 3d 616-17. The Court incorporates that analysis by reference and does not duplicate it here.

312 F.3d at 80).  "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process."  *Sears*, 421 U.S. at 151 n.18.

While "[t]he mere fact that a document is a draft . . . is not a sufficient reason to automatically exempt it from disclosure," a document's draft status is relevant evidence that the document is predecisional.  *See New York Times Co. v. U.S. Dep't of Def.,* 499 F. Supp. 2d 501, 515 (S.D.N.Y. 2007) (holding that draft status, alone, is insufficient to justify application of the deliberate process privilege); *c.f Lee v. F.D.I.C.*, 923 F. Supp. 451, 458 (S.D.N.Y. 1996) ("The mere fact that a document is a draft . . . is not a sufficient reason to automatically exempt it from disclosure . . . the policy reasons for the existence of the privilege must be implicated in order for the Court to find withholding of information necessary.")

A document is "deliberative" if it is "actually . . . related to the process by which policies are formulated."  *Stinson v. City of New York*, 304 F.R.D. 432, 435 (S.D.N.Y. 2015) (omission in original) (quoting *Sec. & Exchange Comm'n v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416 (S.D.N.Y. 2009)).  "The privilege 'does not operate indiscriminately to shield all decision-making by public officials' such as 'routine operating decision[s].'"  *N.Y. Times Co.*, 499 F. Supp. 2d at 514 (quoting *Schiller v. City of New York*, 04-cv-7922-KMK-JCF, 2007 WL 136149, at *12 (S.D.N.Y. Jan. 19, 2007)).  "To determine whether a document is deliberative, '[c]ourts have looked to factors such as whether the document "(i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'"  *Id.* (quoting *Grand Cent. P'Ship*, 166 F.3d at 482).

The deliberative process privilege "does not, however, as a general matter, cover 'purely factual' material." *Hopkins*, 929 F.2d at 85.  Nor does the privilege "protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Tigue*, 312 F.3d at 80 (quoting *Grand Cent. P'Ship*, 166 F.3d at 482

### B.  Discussion

#### 1.  Predecisional and Deliberative Material

In its prior decision, the Court was unable to determine that the documents withheld by the State Department pursuant to Exemption 5 were in fact protected by the deliberate process privilege.  Since that time, the State Department has produced additional materials that strengthen their position through subtraction, and has also submitted a revised and improved *Vaughn* index.  Accordingly, for the reasons articulated below, the Court is now able to conclude that the material marked as withheld in the Revised *Vaughn* Index is predecisional and deliberative, save for the exceptions articulated in § IV(B)(3), below.

#### a.  Emails

In its Prior Opinion, the Court was unable to conclude that the email exchanges described in the original *Vaughn* index, (ECF. No. 29-1) (the "Original *Vaughn* Index"), were predecisional, in part because in several cases, "some of the emails are dated the same date as the announcement to which they relate."  Prior Opinion, 298 F. Supp. 3d at 618.  The Revised *Vaughn* Index resolves this issue by including the time such emails were sent.  *E.g.* Revised *Vaughn* Index at 11 ("All of these exchanges took place prior to the briefing, which, according to the released portions of the documents in this category, was scheduled to take place at 11:00 AM on November 13, 2013.  The latest email in these chains was transmitted at 10:11 AM on November 13.").  The Revised *Vaughn* Index also adequately describes how the emails at issue were "generated as part of a continuous

process of agency decision making, viz., how to respond to on-going inquiries," which adequately demonstrates that those materials are predecisional. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010).[6]

The withheld portion of the emails at issue are also deliberative in nature. In the Court's Prior Opinion, the Court was unable to conclude that the withheld portions of the emails were deliberative because "[a]bsent information describing the authors and recipients, *or* whether the communications involved recommendations for consideration in the deliberative process, such as suggestions made by junior officials to senior officials or decision-makers within the agency, the Court cannot determine that the emails are deliberative in nature and subject to the privilege." Prior Opinion 298 F. Supp. 3d at 619 (emphasis added).

In the Revised *Vaughn* Index, the State Department has remedied that deficiency by including specific descriptions of the withheld portions of the emails, such that the Court can now conclude that the withheld portions relate to evolving policy determinations being made by the State Department, which were ongoing at the time the emails were sent. For example, in Category One, the Revised *Vaughn* Index now includes a description of the withheld portions of the emails in question, described as deliberations and consultations, both within the State Department and with other agencies, "that reflect foreign policy considerations bearing on the timing of the announcement" at issue "as well as participation in the background briefing, . . . detailed information about other aspects of the designations announcement (such as notification of stakeholders)" and "a proposed 'rollout plan' about how the announcement . . . will be made publicly and a proposal

---

[6] As a general matter, the Court declines to require, as Plaintiff requests, that the State Department articulate with specificity precisely when that decision at issue as made, and by whom. The Revised *Vaughn* Index adequately demonstrates that the withheld information was generated as part of the "continuous process of agency decision making," and accordingly the Court can determine that it was predecisional on the record before it. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d at 208.

regarding informing various governmental and foreign stakeholders." Revised *Vaughn* Index at 2. That description adequately articulates both the developing policy considerations at issue, and how the email correspondence was an "essential link in a specified consultative process." *N.Y. Times Co.*, 499 F. Supp. 2d at 514. Accordingly, the Court can now conclude that the withheld material in Category One is both predecisional and deliberative.

Another indicative example is Category 12 of the Revised *Vaughn* Index, which specifies that the withheld material consists of questions by a senior official as to points to be made "during the background briefing on the Department's November 13, 2013 announcement designating Boko Haram and Ansaru as Foreign Terrorist Organizations and Specially Designated Global Terrorists, as well as proposed response and feedback regarding the same. Revised *Vaughn* Index at 11. That type of back and forth exchange, in which proposed policy options are discussed and refined, is both predecisional and deliberative

Upon review of the complete record, including the indicative examples discussed above, the Court finds that the withheld portions of the emails described in the Revised *Vaughn* Index are both predecisional and deliberative, subject to any applicable limitation in § IV(B)(3), below.

### b. Proposed Talking Points, Anticipated Questions and Proposed Answers, and Draft Opening Statements

The State Department has also remedied the deficiencies in the Original *Vaughn* Index as to the proposed talking points, anticipated questions and answers and draft opening statements, such that the Court can now conclude, subject to the limitations of § IV(B)(3) below, that the withheld material in those categories of documents is predecisional and deliberative. Here, the Revised *Vaughn* Index shows two key improvements over its deficient predecessor.

First, the State Department has now produced the final versions of talking points which had previously been withheld, and is now only withholding draft documents. Def.'s Br. at 15. This

alleviates the Court's prior concern that it was not possible to distinguish between draft and final talking points in the Original *Vaughn* Index,  Prior Opinion at 298 F. Supp 3d at 620, and, as only draft documents remain at issue in the Revised *Vaughn* Index, allows the Court, upon review of the full record, to conclude that those documents are predecisional.

Second, the Revised *Vaughn* Index provides a more detailed account of the withheld materials, which allows the Court to determine its relation to the "function and significance of the agency's decision-making process."  Prior Opinion 298 F. Supp 3d at 620 (quoting *The Wilderness Soc'y v. U.S. Dep't of the Interior,* 344 F. Supp. 2d 1, 14 (D.D.C. 2004)).  For example, in Category 6, the State Department describes the withheld portions of draft Q&As and talking points as "newer versions of documents drafted previously, which were updated following remarks by the President and were intended for continuing use by government officials" and that those draft materials "would reveal the author's thoughts and ideas relating to press guidance on a sensitive matter."  Revised *Vaughn* Index at 6-7.  The State Department also indicates that the final version of these documents were released to Plaintiff on May 21, 2018, and that the "information that continues to be withheld includes the justification for a decision about what to include in the Q&A, which reflects the government's deliberative process, as well as the anticipated questions and proposed answers" which were "hypotheticals."  The Court finds that description sufficient to demonstrate that the withheld information is both predecisional and deliberative—the withheld information is contained in working drafts, which reflect the author's positions, not State Department policy, and were intended for continuing internal use and refinement.

The Revised *Vaughn* Index also provides additional insight into the nature of the one document withheld in full and listed as Category 15 in the Revised *Vaughn* Index.  In the Prior Opinion, the Court noted with concern that the description of Category 15 in the Original *Vaughn*

Index provided no specific information upon which the Court could conclude that withholding the document was appropriate.  Prior Opinion, 298 F. Supp. 3d at 620.  The Revised *Vaughn* Index, on the other hand, specifies that the Category 15 document contains only "proposed answers to hypothetical questions, which may or may not have been delivered" and is lacking any of the hallmarks of a completed State Department document, such as a title, header, or end page with the signatures of any employees who reviewed it.  Revised *Vaughn* Index at 13.  Accordingly, the Court can now conclude that it was predecisional and deliberative.

Upon review of the record, including the indicative examples discussed above, the Court finds that, the withheld portions of the documents described in the Revised *Vaughn* Index were both predecisional and deliberative, subject to any applicable limitation in § IV(B)(3), below.

### c.    Draft Rollout Schedules

The State Department has also provided sufficient information to justify its use of Exemption 5 as to the withheld portions of the rollout schedules described in the  Revised *Vaughn* Index.  In its Prior Opinion, the Court had expressed its concern that the Original *Vaughn* Index did not contain sufficiently detailed descriptions for the Court to verify that the draft rollout schedules did not constitute "routine operating decision[s] which could not be withheld under the deliberative process privilege."  Prior Opinion 298 F. Supp. 3d at 621 (quoting *N.Y. Times Co.*, 499 F. Supp. 2d at 514).  The Revised *Vaughn* Index remedies that concern, and contains information sufficient for the Court to conclude that the withheld material regarding draft rollout schedules was predecisional and deliberative, subject to any applicable limitation in § IV(B)(3), below.

As it did in its Prior Opinion, the Court considers Categories 11 and 17 together.  Category 11 describes a draft of a rollout schedule as to "the announcement designating Boko Haram and Ansaru as Foreign Terrorist Organizations and Specially Designated Global terrorists" which is not

in final form, and contains edits and markups, as well as editing comments.  The document is predecisional as to the final rollout plan, and is deliberative in that it reflects the State Department's evolving views as to the sequence and timing of activities surrounding that announcement, including Congressional testimony.  Further, the additional information in the Revised *Vaughn* Index allows the Court to conclude that the activities described, such as coordinating briefings with Congressional testimony, are not "routine operating decisions which [cannot] be withheld under the deliberative process privilege."  Prior Opinion 298 F. Supp. 3d at 621 (quoting *N.Y. Times Co.*, 499 F. Supp. 2d at 514).

Similarly, the Revised *Vaughn* Index provides information sufficient for the Court to conclude that the information withheld in Category 17 is predecisional, deliberative, and does not consist of routine operating decisions.  The Category 17 documents are incomplete drafts which discuss the State Department's "evolving" position as to the "schedule for proposed official remarks, media engagement, and outreach calls on the topic of Iraq."  Revised *Vaughn* Index at 14. The activities described go beyond routine operating procedures, and include coordinating with a wide array of government officials and other stakeholders, and the materials described represent the author's views, rather than official policy of the State Department.  Accordingly, the Court finds them to be predecisional and deliberative.

Upon consideration of the full record, including the indicative examples discussed above, the Court concludes that withheld portions of the rollout documents described in the Revised *Vaughn* Index are both predicational and deliberative, subject to any applicable limitation in § IV(B)(3), below.

### 2.   Inapplicable Exceptions to Exemption 5

While the Court has concluded that much of the withheld material described in the Revised

*Vaughn* Index is predecisional and deliberative, the Court may not determine that they are protected by the deliberate process privilege without first determining whether an exception to that privilege applies.  For the reasons stated below, the Court finds that no such exception applies, with the corollary that the State department's use of the deliberate process privilege in the Revised *Vaughn* index was appropriate, save for the exceptions noted in § IV(B)(3), below.

"[E]ven if the documents at issue are 'predecisional' and 'deliberative,' and thereby fall under the scope of Exemption 5, there are circumstances under which they will be found outside the scope of that protection . . . .  [Those] exceptions include:  (1) when the contents of the document have been 'adopted, formally or informally, as the agency position on an issue or [are] used by the agency in its dealings with the public,' (*La Raza*, 411 F.3d at 356-57); and (2) when the document is more properly characterized as an "opinion[ ] [or] interpretation [ ] which embod[ies] the agency's effective law and policy," in other words, its "working law."  *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 195 (2d Cir. 2012) (quoting *Sears*, 421 U.S. at 153); *see also Sears*, 421 U.S. at 153 ("The affirmative portion of the Act, expressly requiring indexing of 'final opinions,' 'statements of policy and interpretations which have been adopted by the agency,' and 'instructions to staff that affect a member of the public,' 5 U.S.C. § 552(a)(2), represents a strong congressional aversion to secret (agency) law and represents an affirmative congressional purpose to require disclosure of documents which have the force and effect of law.") (internal citation and quotation marks omitted)).  "The question of whether a document constitutes working law, or has been expressly adopted or incorporated by reference, then, are two paths to determining whether a withheld document constitutes what FOIA affirmatively requires to be disclosed—final opinions, statements of policy and interpretations which have been adopted by the agency,' and 'instructions to staff that affect a member of the public."  *Id.*  (quoting *Sears*, 421 U.S. at 153 (internal quotation

marks omitted).

"Mere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference." *La Raza*, 411 F.3d at 358.  Nor is the mere fact that an otherwise properly withheld document contains draft "talking points or recommendations on how to answer questions" sufficient to show that that the document was adopted or is working law, such that withholding portions of the document would be inappropriate.  *See*, *e.g.  Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004).[7]  "Rather, there must be evidence that an agency has actually adopted or incorporated by reference the document at issue; mere speculation will not suffice." *La Raza*, 411 F.3d at 359.

Plaintiff has challenged one broad group of documents as improperly withheld due to their purported adoption by the State Department, and has also challenged an individual document, arguing that it constitutes the State Departments' working law.  Pl. Br at 21-22. For the reasons which follow, the Court has not been presented with evidence sufficient to determine that any of of those documents are were formally adopted as the State Department's public position, or incorporated as working law by the State Department.

First, Plaintiff broadly challenges the State Departments use of deliberate process privilege to withhold draft talking points and Q&As—arguing that they are definitionally "facts and agency positions used by the agency in its dealings with the press." Pl.'s Br. at 22.  Critically, the Court need not determine whether Plaintiff's argument applies to final versions of such documents, as the final documents at issue here have been produced.  Rather, the question before the Court is whether draft versions of those documents are vulnerable to Plaintiff's argument.  The Court holds they are not.

---

[7] *Brennan Ctr. for Justice*, 697 F.3d 184, 200 (2d Cir. 2012) ("Not surprisingly given the nature of much of its caseload, the D.C. Circuit has become something of a specialist in the 'working law' exception.").

No evidence has been presented which demonstrates that the draft documents are in fact final State Department positions, which were at some point publicly adopted or otherwise constitute working law of the State Department. Indeed, it appears that Plaintiff has abandoned this argument in his reply. *See, generally,* Pl.'s Reply (ECF. No. 60). Without such evidence, the Court has no basis for a document by document consideration of this issue, and the law does not support a categorical rule preventing draft talking points and Q&As from being withheld. *See Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004) (talking points were "properly withheld"). Accordingly, Plaintiff's categorical argument fails.

Plaintiff also challenged the redaction of certain portions of document C05973837, which he argues are proven, by the surrounding context, to be the working law of the State Department. Pl's Br. at 21. In response to Plaintiff's arguments, the State Department released additional portions of the document, which make it clear that what Plaintiff had initially interpreted as a request for the general position of the State Department regarding press embargoes, was in reality a discrete question, and not the transmission of any State Department policy or working law.[8] In light of that evidence, the Court has no basis on which to conclude that document C05973837 was adopted or constituted the working law of the State Department.[9]

As the Court has found that no exception to the deliberative process privilege applies, the withheld material which the Court has found to be predecisional and deliberative was properly

---

[8] Here too, it appears Plaintiff may have abandoned this argument. Nonetheless, considering Plaintiff's *pro se* status, the Court completes its analysis of this issue.

[9] To the extent that Plaintiff challenges the State Department's use of the deliberate process privilege on the basis of the approximately five years which have passed since the events at issue, such arguments are without legal support. 5 U.S.C. § 552(b)(5)("inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested"); *Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 464 (D.C. Cir. 2014) ("Exemption 5 of FOIA does not contain a time limit. We must adhere to the text of FOIA and cannot judicially invent a new time limit for Exemption 5.") (footnote omitted).

withheld pursuant to Exemption 5.

### 3. Categories Which the Court Cannot Determine Are Protected by the Deliberative Process Privilege

Despite the improvements in the Revised *Vaughn* Index, and the State Department's beneficial production of previously withheld material, there remain certain categories of documents withheld in whole or in part pursuant to Exemption 5 which the Court cannot conclude, on the basis of the record before it, were properly withheld. Accordingly, for the reasons, and to the extent, articulated below, the Court denies the State Department's motion for summary judgment as to Categories 5, 13 and 18 of the Revised *Vaughn* Index.

In Category 5, certain material was withheld because it relates to "the stated 'Goal' of the talking points." Revised *Vaughn* Index at 5. Additionally, "the opening portions of each bulleted taking points . . . [which] reflect internal information about the Department's broader strategy regarding Syria" was also withheld. *Id.* at 5. Simply put, the State Department's broader positions regarding Syria may be sensitive, but as described, the "Goal" of the talking points appears to be settled State Department policy—as opposed to deliberations as to evolving policy. Accordingly, on the basis of the record before it, the Court declines to endorse the State Department's invocation of the deliberate process privilege as to the documents in Category 5.[10]

Similarly, in Category 13, the State Department indicated that it was unclear whether the "comments and recommended edits" in the draft documents at issue "were addressed and accepted or rejected." Revised *Vaughn* Index at 12. It is the Government's burden to prove that the deliberate process privilege applies. *Fox News Network, LLC v. U.S. Dep't of Treasury,* 911 F. Supp. 2d

---

[10] This ruling does not apply to the withheld portions of document C05973858 which relate to hypothetical questions and answers, and which were properly withheld.

261, 276 (S.D.N.Y. 2012).  It is insufficient for the State Department to claim it is "unclear" whether the edits were accepted or rejected.  The result of that lack of clarity is that the Court has been presented with no basis upon which it can determine that the proposed edits do not constitute final articulations of State Department Policy, rather than deliberations.  To be clear, the State Department has indicated that these documents are "not in final form," however, that, alone, is insufficient to demonstrate that these documents reflect continuing deliberations as to evolving policy.  Without additional clarity regarding the deliberative nature of these documents, the Court cannot approve of the State Department's decision to withhold large portions of them pursuant to the deliberative process privilege.

Finally, the State Department's Revised *Vaughn* entry for Category 18 only indicates that the documents are draft talking points, and that they preview the administrations prospective policy actions.  Indeed, aside from noting that the documents are labeled "DRAFT//INTENRAL USE ONLY" the Category 18 Revised *Vaughn* entry is largely identical to the corresponding entry in the Original *Vaughn* Index.  From the scant proffered description, the Court is unable to conclude that the deliberative process privilege is applicable to Category 18.

### 4.  Conclusion

For the reasons articulated above, summary judgment is granted to the State Department as to their use of Exemption 5 in the Revised *Vaughn* Index, except for Categories 5 (subject to footnote nine, above), 13, and 18, and Plaintiffs motion for summary judgment as to the State Department's use of Exemption 5 is denied.

### V.     APPICABILITY OF EXEMPTION 6

For the reasons articulated below, Defendant's motion for summary judgment as to its use of Exemption 6 to withhold the identity of the three "on background" briefers described in the *ex*

*parte* Declaration is granted, and Plaintiff's motion for summary judgment is denied.  However, also for the reasons articulated below, the Court cannot determine, on the record before it, the identity of the briefer referenced in footnote four of the Fourth Declaration of Eric F. Stein, whether the identify of that briefer was withheld, or determine the propriety of any such withholding. Accordingly the Court declines to grant any party summary judgment as to the identity of that individual.

### A.  Standard[11]

In order to determine whether information was properly withheld pursuant to Exemption 6, the Court must "balance the public's need for the information against the individual's privacy interest to determine whether the disclosure of the [information] would constitute a 'clearly unwarranted invasion of personal privacy.'"  *Cook v. Nat'l Archives & Records Admin.,* 758 F.3d 168, 175-76 (2d Cir. 2014) (quoting 5 U.S.C. § 552(b)(6)) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991)).  "The balancing analysis for FOIA Exemption 6 requires that [courts] first determine whether disclosure of the files would compromise a substantial, as opposed to a *de minimis*, privacy interest, because if no substantial privacy interest is implicated FOIA demands disclosure."  *Id.* (quoting *Long v. Office of Personnel Mgmt.*, 692 F.3d 185, 191 (2d Cir. 2012)).  An individual's privacy concerns "encompass[ ] all interests involving 'the individual's control of information concerning his or her person.'"  *Wood*, 432 F.3d at 88 (quoting *Hopkins*, 929 F.2d at 87).  "Information protected under Exemption 6 includes such items as a person's name, address, place of birth, employment history, and telephone number."  *Lewis v. U.S. Dep't of Justice*, 867 F. Supp. 2d 1, 17 (D.D.C. 2011); *see Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989); *Gov't Accountability*

---

[11] The Court incorporates by reference the standards articulated, and the analysis provided, as to Exemption 6 in the Prior Opinion, including the Court's prior finding that the withheld identities were contained in documents which care "similar files" within the meaning of the FOIA.  Prior Opinion, 298 F. Supp 3d at 622-629.

*Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (personal email addresses);

*Schwaner v. Dep't of the Army*, 696 F. Supp. 2d 77, 82 (D.D.C. 2010) (names, ranks, companies, and

addresses of Army personnel).

Where an agency has demonstrated a privacy interest sufficient to implicate Exemption 6,

the burden falls to the requesting party to establish that disclosure "would serve a public interest

cognizable under FOIA." *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 66 (2d Cir. 2008).  The

public's interest in disclosure involves considerations of "the extent to which disclosure of the

information sought would she[d] light on an agency's performance of its statutory duties or

otherwise let citizens know what their government is up to." *Wood v. Fed. Bureau of Investigation,* 432

F.3d 78, 88 (2d Cir. 2005) (Sotomayor, J.) (quoting *Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355,

355-56 (1997)).

### B.  Recent Developments as to Exemption 6

During the course of the briefing of the motions presently before the Court, Defendant

voluntarily released the "names of the individuals who served as 'on background' briefers but are no

longer employed by the United States government." Def.'s Reply. at 14.  Accordingly, the only

remaining dispute as to the Defendant's use of Exemption 6 is as to the identity of the three "on

background" briefers currently employed by the United States Government, which Defendant

declines to produce.  The identities of those three "on background" briefers were provided to the

Court through the *ex parte* Declaration, for *in camera* review.[12]

### C.  Discussion

Having reviewed the *ex parte* Declaration, the Court concurs with the State Department that

the remaining three briefers whose identities have been withheld have a substantial privacy interest

---

[12] As alluded to above, one additional name may have been withheld.  *See* Def.'s Reply at 14; 4th Stein Decl. ¶ 9, n.4.

their continuing anonymity, as disclosure could negatively impact their capacity to continue

performing their role within the government, and may have implications as to their personal safety.

Having concluded that the privacy interests at stake are substantial, the Court balances those

interests against the public's interest in disclosure. *Wood*, 432 F.3d at 88 (quoting *Bibles v. Or. Natural*

*Desert Ass'n*, 519 U.S. 355, 355-56 (1997)).

As the State Department has sufficiently demonstrated a privacy interest in the identities of

the three briefers at issue, Plaintiff "bears the burden of establishing that disclosure of personal

information would serve a public interest cognizable under FOIA." *Associated Press*, 549 F.3d at 66

(2d Cir. 2008). Plaintiff has identified two potential public interests to balance against the asserted

privacy interests. The first—that disclosure would allow the public insight into "the government's

increasing reliance "on background" briefings as well as other mechanisms for controlling press

coverage"—was rejected by the Court in its previous opinion as being "too attenuated" from "the

potential illumination of the government activity at issue." Prior Opinion, 298 F. Supp. 3d at 626.

The second proposed public interest is that disclosure would allow the public to test the veracity of

the Government's assertions regarding the nature of the "on background" briefers who remain

anonymous despite the fact that they personally disseminated information to the press on behalf of

the Government. That is a colorable interest, which the Court must balance against the privacy

interest asserted.

On balance, the Court finds that the privacy interests asserted outweigh the public interest in

disclosure. Simply put, the concerns associated with disclosure of the briefers' identities, as

disclosed in the *ex parte* Declaration, are serious. On the other hand, the State Department's

decision to voluntarily release the identities of briefers who are no longer are employed by the

Government will allow Mr. Seife, and the public, to test the State Department's assertions as to the

24

nature of the "on background" briefers.  Accordingly, the public's interest in the disclosure of the

remaining withheld identities is diminished, while the serious privacy concerns at issue remain

palpable.  Accordingly, on balance, the Court finds that the substantial privacy interests of the

briefers at issue in the *ex parte* Declaration outweigh the public's interest in disclosure, and those

identities may be properly withheld pursuant to Exemption 6.[13]

The above analysis, however, cannot be extended to the individual discussed in footnote

four of Mr. Stein's fourth declaration.  On the record provided, the Court cannot determine who is

referred to in footnote 4, whether that identity was withheld, or if any such withholding was

permissible pursuant to Exemption 6.  Accordingly, the Court defers judgment as to the identity of

that individual, and requests that the State Department provide that information to the Court, *ex*

*parte* if need be.

## VI.   PLAINTIFF'S ALLEGATIONS OF IMPROPER CONDUCT

Plaintiff has accused the State Department of engaging in "a pattern and practice of

inaccuracy and incompleteness that raises questions about its candor and/or good faith," Pl.'s Br. at

26, and has compiled an exhibit in which he provides his analysis on each alleged instance of such

conduct.  Pl.'s Br., Ex. N (ECF No. 60-1).  The Court, however, accepts the State Department's

proffer that it has "endeavored to provide complete and accurate information to the Court," Def.'s

Reply at 19, and finds that presumption of good faith owed to the State Department's sworn

testimony remains undisturbed.

## VII.   CONCLUSION

For the reasons stated above, Plaintiffs motion for summary judgment is DENIED, and the

---

[13] The Court notes that the State Department's decision to voluntarily release the names of briefers who are no longer employed by the Government is an admirable practice, and one that factored into the Court's analysis.  The Court expects that the State Department will continue to monitor the remaining withheld identities, and consider voluntary disclosure of any identities for which it would be appropriate to do so.

State Department's motion for summary judgment is GRANTED IN PART and DENIED IN

PART.  For the avoidance of doubt, the Court provides the following summary of the outcome of

Defendant's motion for summary judgment:

- **REQUEST F-2014-12997:**  Summary judgment is granted in favor of the State Department as to the search for State-Department produced transcripts, and denied as to the search for non-State-Department-Produced-Transcripts.

- **Exemption 5:**  Summary judgment is granted in favor of the State Department as to all applications of Exemption 5 in the Revised *Vaughn* Index, except for Categories 5 (subject to footnote nine, above), 13, and 18 for which summary judgment is denied.

- **Exemption 6**:  Summary judgment is granted in favor of the State Department, except as to the individual discussed in footnote four of the Fourth Declaration of Eric F. Stein.

The remaining issues are discrete, and the Court expects that they may be resolved by

conferral amongst the parties.  The Court directs the parties to so confer, and to submit a joint

status letter to the Court describing what, if any, issues remain in this case no later than three weeks

following the date of this opinion and order.

The Clerk of Court is directed to terminate the motions pending at docket numbers 48 and

52.

SO ORDERED.

 Dated:  March 6, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge